RAC (4462)
2004/06/17
Our File No.: 03-11331-24

Richard A. Catalina, Jr., Esq. (4462)
CATALINA & ASSOCIATES
A Professional Corporation
167 Avenue at the Common
Shrewsbury, New Jersey 07702
(732) 380-0080
Local Counsel Attorneys for Defendant
Cytodyne LLC

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(TRENTON)

```
------------------------------------------------------X
                                          :
In Re: NUTRAQUEST, INC.,                  :   Chapter 11
                                          :
          Debtor,                         :   Case No. 03-44147 (RTL)
                                          :
------------------------------------------------------X
                                          :
RICHARD MARKOWITZ, RENEE                  :   Hon. Garrett E. Brown, Jr., U.S.D.J.
PIERETTI, and TONY FERNANDEZ on           :   Civil Action No. 04-00384 (GEB)
behalf of themselves and others similarly :
situated,                                 :
                                          :
                                          :   ANSWER AND AFFIRMATIVE
          Plaintiffs,                     :   DEFENSES TO SECOND
                                          :   AMENDED COMPLAINT AND
                                          :   COUNTERCLAIM BY
          v.                              :   DEFENDANT CYTODYNE LLC
                                          :
NUTRAQUEST, INC., formerly known as       :
CYTODYNE TECHNOLOGIES, INC.,              :
CYTODYNE INTERNATIONAL LLC,               :
CYTODYNE LLC, PROSOURCE                   :
NUTRITIONAL SYSTEMS, INC.,                :
PROSOURCE PERFORMANCE                     :
PRODUCTS, RTC RESEARCH &                  :
DEVELOPMENT, LLC, PHOENIX                 :
LABORATORIES, INC., ROBERT                :
CHINERY, MEL RICH, KELLY CONKLIN,         :
CARLON COLKER, PEAK WELLNESS,             :
INC., and TIM ZIEGENFUSS,                 :
                                          :
          Defendants.                     :
                                          :
------------------------------------------------------X
```

Defendant Cytodyne LLC ("Cytodyne"), by and through its local counsel attorneys, Catalina & Associates, A Professional Corporation, submits this Answer and Affirmative Defenses to the Second Amended Class Action Complaint (the "Complaint") by plaintiffs Richard Markowitz, Renee Pieretti, and Tony Fernandez, on behalf of themselves and others similarly situated ("Plaintiffs"), in this litigation (the "Action"):

1.      Cytodyne only admits that Plaintiffs purport to bring certain claims and seek certain relief under the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-1, *et seq.*, and other New Jersey law on their own behalf and on behalf of an alleged putative class of purchasers of certain products.  Cytodyne specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."  Cytodyne further denies any and all other allegations of Paragraph 1 not expressly admitted herein.

2.      Cytodyne denies that Plaintiffs purport to bring certain claims and seek certain relief under the Uniform Fraudulent Transfer Act, *N.J.S.A.* 25:2-20, *et seq.*, and New Jersey Court Rule (hereinafter "*R.*") 4:27-2 on their own behalf and on behalf of an alleged putative class of purchasers of certain products.  By Notice of Voluntary Dismissal Pursuant to *Fed. R. Civ. P.* 41(a)(1)(i) dated January 6, 2004, a copy of which is attached to this Answer as Exhibit "A," Plaintiffs ***expressly abandoned*** Count V of the Complaint, which alleged claims under the Uniform Fraudulent Transfer Act, *N.J.S.A.* 25:2-20, *et seq.*, and *R.* 4:27-2 (hereinafter referred to as "Plaintiffs' Dismissal of Count V and All Fraudulent Conveyance Claims").

## PARTIES

3.     Cytodyne lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3 and therefore denies the allegations therein in their entirety.

4.     Cytodyne lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4 and therefore denies the allegations therein in their entirety.

5.     Upon information and belief, Cytodyne admits that defendant Cytodyne Technologies, Inc., now known as Nutraquest, Inc. ("Nutraquest"), was a New Jersey corporation and that it previously maintained its principal place of business at 2231 Landmark Place, Manasquan, New Jersey.  Cytodyne denies that named defendant Cytodyne International, LLC ("International") is or was a New Jersey limited liability company and that it maintained its principal place of business at 2231 Landmark Place, Manasquan, New Jersey.  Cytodyne admits that Cytodyne is a limited liability company and that it maintains its principal place of business in Hicksville, New York.  Cytodyne further denies any allegation, by inference, implication or otherwise, that Cytodyne, Nutraquest and International are one and the same entity, are alter egos of each other, or are otherwise corporate related entities, and that Plaintiffs' unfounded and disingenuous characterization of all three defendants simply as "Cytodyne" is improper, without any legal or factual justification, and frivolous as a matter of law.  As such, Cytodyne denies that allegation in Paragraph 5 in its entirety.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead the parties to this Action and for their intentional characterization of three separate defendant entities simply as "Cytodyne."  Cytodyne further denies any and all other allegations of Paragraph 5 not expressly admitted herein.

6.     The allegations set forth in Paragraph 6 are not asserted against Cytodyne and so no response is required by Cytodyne.

7.    The allegations set forth in Paragraph 7 are not asserted against Cytodyne and so no response is required by Cytodyne.

8.    The allegations set forth in Paragraph 8 are not asserted against Cytodyne and so no response is required by Cytodyne.

9.    The allegations set forth in Paragraph 9 are not asserted against Cytodyne and so no response is required by Cytodyne.  Moreover, the term "several of the corporate defendants" is vague, ambiguous and without definition and meaning.  As such, Cytodyne specifically denies this allegation in Paragraph 9 in its entirety and any other allegation in the Complaint incorporating that term or any other similar term.

10.    The allegations set forth in Paragraph 10 are not asserted against Cytodyne and so no response is required by Cytodyne.  Moreover, the term "corporate defendants" is vague, ambiguous and without definition and meaning.  As such, Cytodyne specifically denies this allegation in Paragraph 10 in its entirety and any other allegation in the Complaint incorporating that term or any other similar term.

11.    The allegations set forth in Paragraph 11 are not asserted against Cytodyne and so no response is required by Cytodyne.  Moreover, the term "possibly other corporate defendants" is vague, ambiguous and without definition and meaning.  As such, Cytodyne specifically denies this allegation in Paragraph 11 in its entirety and any other allegation in the Complaint incorporating that term or any other similar term.

12.    The allegations set forth in Paragraph 12 are not asserted against Cytodyne and so no response is required by Cytodyne.  However, Cytodyne denies any allegation, by inference, implication or otherwise, that Cytodyne, Nutraquest and International are one and the same entity, are alter egos of each other, or are otherwise corporate related entities, and that Plaintiffs' unfounded and disingenuous characterization of all three defendants simply as "Cytodyne" is

4

improper, without any legal or factual justification, and frivolous as a matter of law.  As such, Cytodyne denies that allegation in Paragraph 12 in its entirety.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead the parties to this Action and for their intentional characterization of three separate defendant entities simply as "Cytodyne."

13.    The allegations set forth in Paragraph 13 are not asserted against Cytodyne and so no response is required by Cytodyne.

14.    The allegations set forth in Paragraph 14 are not asserted against Cytodyne and so no response is required by Cytodyne.

## JURISDICTION AND VENUE

15.    Cytodyne admits that Plaintiffs purport to bring certain claims and seek certain relief on their own behalf and on behalf of an alleged putative class of purchasers of certain products, and therefore leaves Plaintiffs to their proofs.  Cytodyne denies that Plaintiffs or the putative "class members" are entitled to any relief, denies that this Action may be maintained as a class action, and further denies any and all other allegations of Paragraph 15 not expressly admitted herein.

16.    Cytodyne denies that this Action is properly venued in Essex County, New Jersey. Cytodyne admits that Plaintiffs purport to bring certain claims and seek certain relief on their own behalf and on behalf of an alleged putative class of purchasers of certain products, and therefore leaves Plaintiffs to their proofs.  Cytodyne denies that Plaintiffs or the putative "class members" are entitled to any relief and denies that this Action may be maintained as a class action.  Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual

justification, and frivolous as a matter of law.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine." Cytodyne further denies any and all other allegations of Paragraph 16 not expressly admitted herein.

## **FACTS COMMON TO ALL COUNTS**

17.    Upon information and belief, Cytodyne admits that Nutraquest previously marketed a dietary supplement under the name and trademark Xenadrine RFA-1 ("RFA-1"); that RFA-1 contained the herbal equivalents of synephrine, ephedrine and caffeine, among other ingredients; that Nutraquest commenced marketing of RFA-1 in or about 1997; and that Nutraquest sold RFA-1 to wholesalers, retailers and customers.  However, Cytodyne specifically denies any allegation, by inference, implication or otherwise, that Cytodyne, Nutraquest and International are one and the same entity, are alter egos of each other, or are otherwise corporate related entities, and that Plaintiffs' unfounded and disingenuous characterization of all three defendants simply as "Cytodyne" is improper, without any legal or factual justification, and frivolous as a matter of law.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead the parties to this Action and for their intentional characterization of three separate defendant entities simply as "Cytodyne."  Cytodyne further denies any and all other allegations of Paragraph 17 not expressly admitted herein.

18.    Cytodyne admits that Xenadrine EFX ("EFX") is an ephedrine-free formulation containing synephrine and caffeine, among other ingredients; that EFX is manufactured by defendant Phoenix Laboratories, Inc. ("Phoenix"); and that EFX is distributed by defendant ProSource Performance Products, Inc. ("ProSource").  However, Cytodyne specifically denies any allegation, by inference, implication or otherwise, that Cytodyne, Nutraquest and

International are one and the same entity, are alter egos of each other, or are otherwise corporate related entities, and that Plaintiffs' unfounded and disingenuous characterization of all three defendants simply as "Cytodyne" is improper, without any legal or factual justification, and frivolous as a matter of law.  As such, Cytodyne denies that allegation in Paragraph 18 in its entirety.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead the parties to this Action and for their intentional characterization of three separate defendant entities simply as "Cytodyne."  Cytodyne further denies any and all other allegations of Paragraph 18 not expressly admitted herein.

19.    Cytodyne admits that federal law classifies RFA-1 and EFX as "dietary supplements," and in some cases "food," rather than "drugs," as those terms are used in the Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301-397, as amended by the Dietary Supplement Health and Education Act of 1994 ("DSHEA"), Pub. L. No. 1093-417, 108 Stat. 4325 (1974). Cytodyne denies the allegation that RFA-1 and EFX have *not* been tested for safety and efficacy. Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."  Cytodyne further denies any and all other allegations in Paragraph 19 not expressly admitted herein.

20.    The allegations set forth in Paragraph 20 are not asserted against Cytodyne and so no response is required by Cytodyne.

21. Cytodyne denies the allegations in Paragraph 21 and leaves Plaintiffs to their proofs. In addition, Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law. Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."

22. Cytodyne denies all allegations in Paragraph 22 in their entirety. In addition, Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law. Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."

23. Cytodyne admits that Plaintiffs purport to refer to labeling, marketing and promotional materials for RFA-1 and EFX, to which Cytodyne refers to those materials for true, complete and accurate statements of their contents. However, Cytodyne specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law. Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and

**8**

for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine." Cytodyne further denies any and all other allegations in Paragraph 23 in their entirety not expressly admitted herein.

24. Cytodyne admits that Plaintiffs purport to refer to certain statements from unspecified "promotional materials," including a former Internet web site allegedly operated by Nutraquest, to which Cytodyne refers to those materials for true, complete and accurate statements of their contents. Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law. Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine." Cytodyne denies any and all other allegations in Paragraph 23 in their entirety not expressly admitted herein.

25. Cytodyne admits that Plaintiffs purport to refer to certain statements from www.xenadrine.com and from a Federal Trade Commission Staff Report, to which Cytodyne refers to those materials for true, complete and accurate statements of their contents. However, Cytodyne specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law. Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of

those separate and vastly different products simply as "Xenadrine." Cytodyne further denies any and all other allegations in Paragraph 24 in their entirety not expressly admitted herein.

26.    Cytodyne denies the allegations in Paragraph 26 in their entirety. Cytodyne further specifically denies any allegation, by inference, implication or otherwise, that Cytodyne, Nutraquest and International are one and the same entity, are alter egos of each other, or are otherwise corporate related entities, and that Plaintiffs' unfounded and disingenuous characterization of all three defendants simply as "Cytodyne" is improper, without any legal or factual justification, and frivolous as a matter of law. Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead the parties to this Action and for their intentional characterization of three separate defendant entities simply as "Cytodyne." In addition, Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law. Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."

27.    Cytodyne admits that Plaintiffs purport to refer to advertising and promotion of RFA-1 and discussions of an "Eastern Michigan University Study," conducted by one W. Jeffrey Armstrong ("Armstrong"), to which Cytodyne refers for true, complete and accurate statements of their contents. However, Cytodyne specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law. Cytodyne further states that

sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine." Cytodyne further denies any and all other allegations in Paragraph 27 in their entirety not expressly admitted herein.

28.    Cytodyne admits that Plaintiffs purport to refer to an e-mail dated August 11, 2000 from named defendant Kelly Conklin ("Mr. Conklin") to named defendant Robert Chinery ("Mr. Chinery"), to which Cytodyne refers for true, complete and accurate statements of the contents of that e-mail.  Cytodyne denies any and all other allegations in Paragraph 28 in their entirety not expressly admitted herein.

29.    Cytodyne admits that Plaintiffs purport to refer to an e-mail dated October 10, 2000 from Mr. Conklin to Dr. Ziegenfuss, to which Cytodyne refers for true and completed statements of that e-mail.  Cytodyne denies any and all other allegations in Paragraph 29 in their entirety not expressly admitted herein.

30.    Cytodyne admits that Plaintiffs purport to refer to an e-mail dated November 18, 2000 from Dr. Ziegenfuss to Armstrong, to which Cytodyne refers for true and completed statements of that e-mail.  However, Cytodyne specifically denies any allegation, by inference, implication or otherwise, that Cytodyne, Nutraquest and International are one and the same entity, are alter egos of each other, or are otherwise corporate related entities, and that Plaintiffs' unfounded and disingenuous characterization of all three defendants simply as "Cytodyne" is improper, without any legal or factual justification, and frivolous as a matter of law.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead the parties to this Action and for their intentional characterization of three

separate defendant entities simply as "Cytodyne."  Cytodyne denies any and all other allegations in Paragraph 30 in their entirety not expressly admitted herein.

31.    Cytodyne admits that Plaintiffs purport to refer to an "Eastern Michigan University Study," published in the periodical *Journal of Exercise Physiology Online*, to which Cytodyne refers for true, complete and accurate statements of that study.  Cytodyne specifically denies, however, any allegation, by inference, implication or otherwise, that Cytodyne, Nutraquest and International are one and the same entity, are alter egos of each other, or are otherwise corporate related entities, and that Plaintiffs' unfounded and disingenuous characterization of all three defendants simply as "Cytodyne" is improper, without any legal or factual justification, and frivolous as a matter of law.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead the parties to this Action and for their intentional characterization of three separate defendant entities simply as "Cytodyne."  In addition, Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine." Cytodyne further denies any and all other allegations in Paragraph 31 in their entirety not expressly admitted herein.

32.    Cytodyne admits that Plaintiffs purport to refer to an e-mail dated August 20, 2002 from Mr. Conklin to Dr. Ziegenfuss, to which Cytodyne refers for true, complete and accurate statements of that e-mail.  However, Cytodyne specifically objects to and denies Plaintiffs'

collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine." Cytodyne further denies any and all other allegations in Paragraph 32 in their entirety not expressly admitted herein.

33.    Cytodyne admits that Plaintiffs purport to refer to statements from an Internet web site and to a study published in the periodical *American College of Nutrition*, to which Cytodyne refers for true, complete and accurate statements of those materials.  However, Cytodyne specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."  Cytodyne further denies any and all other allegations in Paragraph 33 in their entirety not expressly admitted herein.

34.    Cytodyne admits that Plaintiffs purport to refer to statements from an alleged Internet web site, to which Cytodyne refers for true, complete and accurate statements of that web site.  Cytodyne denies any and all other allegations in Paragraph 34 in their entirety not expressly admitted herein.

35.    Cytodyne admits that Plaintiffs purport to refer to statements from an alleged Internet web site and to a study published in the periodical *American College of Nutrition*, to which Cytodyne refers for true, complete and accurate statements of those materials.  However, Cytodyne specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."  Cytodyne further denies any and all other allegations in Paragraph 35 in their entirety not expressly admitted herein.

36.    Cytodyne denies the allegations in Paragraph 36 in their entirety.  Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."

37.    Cytodyne admits that Plaintiffs purport to refer to alleged promotional material allegedly authored by Dr. Ziegenfuss, to which Cytodyne refers for true, complete and accurate statements of that material.  Cytodyne specifically denies, however, any allegation, by inference, implication or otherwise, that Cytodyne, Nutraquest and International are one and the same entity, are alter egos of each other, or are otherwise corporate related entities, and that Plaintiffs'

unfounded and disingenuous characterization of all three defendants simply as "Cytodyne" is improper, without any legal or factual justification, and frivolous as a matter of law. Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead the parties to this Action and for their intentional characterization of three separate defendant entities simply as "Cytodyne." Cytodyne further denies any and all other allegations in Paragraph 37 in their entirety not expressly admitted herein.

38.    Cytodyne denies the allegations in Paragraph 38 in their entirety. Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law. Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."

## FRAUDULENT TRANSFER OF ASSETS
## FROM CYTODYNE TECHNOLOGIES, INC.

39.    Cytodyne denies the allegations in Paragraph 39 in their entirety, especially in light of Plaintiffs' Dismissal of Count V and All Fraudulent Conveyance Claims.

40.    Cytodyne denies the allegations in Paragraph 40 in their entirety, especially in light of Plaintiffs' Dismissal of Count V and All Fraudulent Conveyance Claims.

41.    Cytodyne denies the allegations in Paragraph 41 in their entirety, especially in light of Plaintiffs' Dismissal of Count V and All Fraudulent Conveyance Claims.

42.    Cytodyne denies the allegations in Paragraph 42 in their entirety, especially in light of Plaintiffs' Dismissal of Count V and All Fraudulent Conveyance Claims.

43.    Cytodyne denies the allegations in Paragraph 43 in their entirety, especially in light of Plaintiffs' Dismissal of Count V and All Fraudulent Conveyance Claims.

## **CLASS ACTION ALLEGATIONS**

44.    Cytodyne admits that Plaintiffs purport to bring this Action as a class action lawsuit, purport to define a class, and purport to disclaim certain claims and damages of and on behalf of an alleged putative class.  Cytodyne specifically denies that treatment of this Action as a class action is appropriate or warranted, and further denies any and all other allegations in Paragraph 44 in their entirety not expressly admitted herein.

45.    Cytodyne specifically denies that treatment of this Action as a class action is appropriate or warranted and that the creation of certain subclasses is appropriate or warranted.  Cytodyne further denies any and all other allegations in Paragraph 45 in their entirety not expressly admitted herein.

46.    Cytodyne denies the allegations in Paragraph 46 in their entirety.

47.    Cytodyne denies the allegations in Paragraph 47 in their entirety.

48.    Cytodyne denies the allegations in Paragraph 48 in their entirety.  Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."

49.    Cytodyne denies the allegations in Paragraph 49 in their entirety.

50.    Cytodyne denies the allegations in Paragraph 50 in their entirety.

16

51.    Cytodyne denies the allegations in Paragraph 51 in their entirety.

52.    Cytodyne denies the allegations in Paragraph 52 in their entirety.

53.    Cytodyne denies the allegations in Paragraph 53 in their entirety.

### COUNT I
### NEW JERSEY CONSUMER FRAUD ACT

54.    Cytodyne incorporates by reference all of its responses to all of the prior allegations as though set forth fully herein.

55.    Cytodyne denies the allegations in Paragraph 55 in their entirety.  Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."

56.    Cytodyne is without knowledge or sufficient information as to form a belief as to the truth of the allegations that "Plaintiffs purchased and used Xenadrine for personal use," and on that basis, denies that allegation.  Moreover, Cytodyne specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law. Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products

simply as "Xenadrine." Cytodyne further denies that treatment of this Action as a class action is appropriate or warranted and that the creation of certain subclasses is appropriate or warranted. Cytodyne further denies any and all other allegations in Paragraph 56 in their entirety not expressly admitted herein.

57.    Cytodyne is without knowledge or sufficient information as to form a belief as to the truth of the allegation in Paragraph 57, which is not a statement of fact, but of legal conclusion, and on that basis, denies that allegation. Moreover, Cytodyne specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law. Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."

58.    Cytodyne denies the allegations in Paragraph 58 in their entirety. Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law. Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."

59.    Cytodyne denies the allegations in Paragraph 59 in their entirety. Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at

issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law. Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."

## COUNT II
## FRAUDULENT INDUCEMENT

60.    Cytodyne incorporates by reference all of its responses to all of the prior allegations as though set forth fully herein.

61.    Cytodyne denies the allegations in Paragraph 61 in their entirety. Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law. Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."

62.    Cytodyne denies the allegations in Paragraph 62 in their entirety. Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law. Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products

the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine." Cytodyne further denies that treatment of this Action as a class action is appropriate or warranted and that the creation of certain subclasses is appropriate or warranted.

63. Cytodyne denies the allegations in Paragraph 63 in their entirety. Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law. Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine." Cytodyne further denies that treatment of this Action as a class action is appropriate or warranted and that the creation of certain subclasses is appropriate or warranted.

64. Cytodyne denies the allegations in Paragraph 64 in their entirety. Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law. Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine." Cytodyne further denies that treatment of this Action as a class action is appropriate or warranted and that the creation of certain subclasses is appropriate or warranted.

65.    Cytodyne denies the allegations in Paragraph 65 in their entirety.

66.    Cytodyne denies the allegations in Paragraph 66 in their entirety.  Cytodyne further denies that treatment of this Action as a class action is appropriate or warranted and that the creation of certain subclasses is appropriate or warranted.

## COUNT III
## FRAUDULENT CONCEALMENT

67.    Cytodyne incorporates by reference all of its responses to all of the prior allegations as though set forth fully herein.

68.    Cytodyne denies the allegations in Paragraph 68 in their entirety.  Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."  Cytodyne further denies that treatment of this Action as a class action is appropriate or warranted and that the creation of certain subclasses is appropriate or warranted.

69.    Cytodyne denies the allegations in Paragraph 69 in their entirety.  Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products

the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."  Cytodyne further denies that treatment of this Action as a class action is appropriate or warranted and that the creation of certain subclasses is appropriate or warranted.

70.    Cytodyne denies the allegations in Paragraph 70 in their entirety. Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."  Cytodyne further denies that treatment of this Action as a class action is appropriate or warranted and that the creation of certain subclasses is appropriate or warranted.

71.    Cytodyne denies the allegations in Paragraph 71 in their entirety.

72.    Cytodyne denies the allegations in Paragraph 72 in their entirety.  Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."  Cytodyne further denies that treatment of

this Action as a class action is appropriate or warranted and that the creation of certain subclasses is appropriate or warranted.

73.    Cytodyne denies the allegations in Paragraph 73 in their entirety.  Cytodyne further denies that treatment of this Action as a class action is appropriate or warranted and that the creation of certain subclasses is appropriate or warranted.

**COUNT IV**

**UNJUST ENRICHMENT**

74.    Cytodyne incorporates by reference all of its responses to all of the prior allegations as though set forth fully herein.

75.    Cytodyne denies the allegations in Paragraph 75 in their entirety.  Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."  Cytodyne further denies that treatment of this Action as a class action is appropriate or warranted and that the creation of certain subclasses is appropriate or warranted.

76.    Cytodyne denies the allegations in Paragraph 76 in their entirety.  Cytodyne further denies that treatment of this Action as a class action is appropriate or warranted and that the creation of certain subclasses is appropriate or warranted.

## COUNT V

## FRAUDULENT TRANSFER

77.    Cytodyne denies the allegations in Paragraph 77 in their entirety, especially in light of Plaintiffs' Dismissal of Count V and All Fraudulent Conveyance Claims.

78.    Cytodyne denies the allegations in Paragraph 78 in their entirety, especially in light of Plaintiffs' Dismissal of Count V and All Fraudulent Conveyance Claims.

79.    Cytodyne denies the allegations in Paragraph 79 in their entirety, especially in light of Plaintiffs' Dismissal of Count V and All Fraudulent Conveyance Claims.

80.    Cytodyne denies the allegations in Paragraph 80 in their entirety, especially in light of Plaintiffs' Dismissal of Count V and All Fraudulent Conveyance Claims.

81.    Cytodyne denies the allegations in Paragraph 81 in their entirety, especially in light of Plaintiffs' Dismissal of Count V and All Fraudulent Conveyance Claims.

## REQUEST FOR RELIEF

82.    Cytodyne denies the allegations in Paragraph 82 in their entirety.  Cytodyne further specifically objects to and denies Plaintiffs' collective characterization of various products at issue in this Action simply as "Xenadrine," on the basis that such a gross and overreaching characterization is vague, ambiguous, improper, without any legal or factual justification, and frivolous as a matter of law.  Cytodyne further states that sanctions should be imposed against Plaintiffs for their deliberate failure to properly plead allegations defining the specific products the subject of this Action and for their intentional collective characterization of those separate and vastly different products simply as "Xenadrine."  Cytodyne further denies that treatment of this Action as a class action is appropriate or warranted and that the creation of certain subclasses is appropriate or warranted.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

The Complaint fails to properly plead its allegations with sufficient particularity, and therefore must be dismissed pursuant to *Fed. R. Civ. P.* 9(b), *Fed. R. Civ. P.* 12(b)(6) and *Fed. R. Civ. P.* 12(c).

### Third Affirmative Defense

Plaintiffs' claims are barred by the doctrine of laches.

### Fourth Affirmative Defense

Plaintiffs' claims are barred by the doctrine of unclean hands.

### Fifth Affirmative Defense

Plaintiffs' claims are barred as a result of Plaintiffs' utter failure to follow and adhere to product instructions, and thus, any claim as to the efficacy of any product is a direct and proximate result of Plaintiffs' own actions and conduct or lack thereof.

### Sixth Affirmative Defense

Plaintiffs have not sustained any compensable damages or injury.

### Seventh Affirmative Defense

Plaintiffs may not maintain this Action as a class action lawsuit.

### Eighth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by federal legislation and regulations governing the labeling, advertising, and sale of dietary and nutritional supplements.

## Ninth Affirmative Defense

Plaintiffs' claims fall within the primary jurisdiction of the federal Food and Drug Administration.

## Tenth Affirmative Defense

This Court lacks personal jurisdiction over this defendant.

## Eleventh Affirmative Defense

Plaintiffs have failed to bring this Action in a proper venue.

## Twelfth Affirmative Defense

Plaintiffs have failed, in whole or in part, to mitigate their damages.

## Thirteenth Affirmative Defense

Certain individuals claimed to be members of an alleged putative "class" are barred, in whole or in part, from recovery because they have taken actions or made statements that estop them from asserting their claims or that constitute a waiver of their claims.

## Fourteenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by application of the doctrine of res judicata and the effects of previous judgments.

## Fifteenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by application of the doctrine of collateral estoppel and the effects of previous judgments.

## Sixteenth Affirmative Defense

Plaintiffs are barred, in whole or in part, from any recovery by application of the doctrine of accord and satisfaction.

**Seventeenth Affirmative Defense**

Plaintiffs' are barred, in whole or in part, from recovery because they have released their alleged claims.

**Eighteenth Affirmative Defense**

Plaintiffs' claims are barred by application of the entire controversy doctrine.

**Nineteenth Affirmative Defense**

Plaintiffs' claims are barred, in whole or in part, by application of the economic loss doctrine.

**Twentieth Affirmative Defense**

Certain Plaintiffs may be barred, in whole or in part, from recovery because they have already brought actions and have received judgments on part of some or all of the claims asserted herein.

**Twenty-First Affirmative Defense**

Certain Plaintiffs may be barred from any recovery as a result of having already received a refund of their purchase price of the product.

**Twenty-Second Affirmative Defense**

Plaintiffs' claims are barred, in whole or in part, due to the spoliation of evidence.

**Twenty-Third Affirmative Defense**

Plaintiffs lack standing to assert these claims because, among other things, they have sustained no injury or damage.

**Twenty-Fourth Affirmative Defense**

Some of Plaintiffs' claims are barred because those Plaintiffs are not in privity with Cytodyne, conferred no direct benefit upon Cytodyne, that retention of any such benefit would be unjust, that Plaintiffs expected remuneration from Cytodyne and that any remuneration enriched Cytodyne beyond any contractual rights or that any contract ever existed between Plaintiffs and Cytodyne.

**Twenty-Fifth Affirmative Defense**

Plaintiffs' request for punitive damages cannot be sustained because an award of punitive damages under state law by a jury that (1) is not provided adequate constitutional standards of sufficient clarity for determining the appropriate imposition of, and the approximate size of, a punitive damage aware; (2) is not adequately instructed on the limits of punitive damages imposed by the applicable principles of deterrence and punishment; (3) is not expressly prohibited from awarding punitive damages, or determining the amount of punitive damages award, in whole or in part, on the basis of invidiously discriminatory characteristics, including without limitation the residence, wealth, and corporate status of Cytodyne; (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible; (5) is not properly instructed regarding Plaintiffs' burden of proof with respect to each and every element of a claim for punitive damages; or (6) is not subject to trial court and appellate judicial review for reasonableness and furtherance of legitimate purpose on the basis of constitutionality adequate and objective standards violates Cytodyne's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and by the applicable state constitutions, and would be improper under the common law and public policies of the States.

Plaintiffs' request for punitive damages also cannot be sustained because the applicable State laws regarding the standards for determining liability for and the amount of punitive fail to give Cytodyne prior notice of the conduct for which punitive damages may be imposed and the severity of the penalty that may be imposed and are therefore void for vagueness in violation of Cytodyne's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and by the applicable State constitutions.

Further, Plaintiffs' request for punitive damages against Cytodyne cannot be sustained because an award of punitive damages under state law, subject to no predetermined limit, such as a maximum multiple of compensatory damages or a maximum limit on the amount of punitive damages that may be imposed, would violate Cytodyne's due process rights guaranteed by the Fifth and the Fourteenth Amendments to the United States Constitution and by the applicable State constitutions, would violate Cytodyne's right not to be subjected to an excessive award in violation of the Eighth Amendment to the United States Constitution and applicable State constitutions, and would be improper under the common law and public policies of applicable state law.

Moreover, Plaintiffs' request for punitive damages against Cytodyne cannot be sustained because an award of punitive damages exceeding the limits authorized by the criminal laws or other comparable laws of the applicable State would violate Cytodyne's due process and equal protection rights guaranteed by the Fifth, Fourteenth and Fifteenth Amendments to the United States Constitution and by the applicable State constitutions, and would be improper under the common law and public policies of applicable State law.

Plaintiffs' request for punitive damages on behalf of the entire putative nationwide class under New Jersey law also cannot be sustained because (1) Courts adjudicating claims under New Jersey cannot award punitive damages based on conduct occurring outside New Jersey, (2)

Courts adjudicating claims under New Jersey cannot award punitive damages against parties residing outside the State of New Jersey, and (3) punitive damages awarded on a class-wide basis would fail to correlate with the individual compensatory damages allegedly sustained by each individual putative class member, in violation of Cytodyne's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and under applicable State constitutions.

### Twenty-Sixth Affirmative Defense

In this putative class action lawsuit, the state law governing various Plaintiffs' claims may differ.  Cytodyne is entitled to the benefit of all defenses and presumptions contained in, or arising from, the law of the State whose substantive law controls the Action as to each individual member of the class.  Cytodyne reserves the right to assert all applicable defenses under the law that governs the claims of any particular Plaintiff.

### Twenty-Seventh Affirmative Defense

Cytodyne hereby gives notice that it intends to rely upon such other affirmative defenses as may become available or apparent during the course of discovery, and thus, reserves the right to amend this Answer to assert such defenses.

### Twenty-Eighth Affirmative Defense

The allegations by Plaintiffs against Cytodyne have absolutely no basis in law and/or in fact and are asserted solely for the purpose of harassment, slander, and obstruction, thereby subjecting Plaintiffs to sanctions pursuant to *Fed. R. Civ. P.* 11(c).

**WHEREFORE**, Cytodyne demands judgment dismissing the Complaint with costs, awarding Cytodyne its attorneys fees and disbursements to the extent recoverable, and such other and further relief as this Court may deem just and proper.

## DEMAND FOR STATEMENT OF DAMAGES

Cytodyne hereby demands that, in accordance with the Federal Rules of Civil Procedure, Plaintiffs serve a statement of claimed damages within five (5) days.

## DEMAND FOR DOCUMENTS REFERENCED IN THE COMPLAINT

Cytodyne demands that, in accordance with the Federal Rules of Civil Procedure, Plaintiffs produce all documents referred to in the Complaint within five (5) days of this written demand.

## DEMAND FOR INITIAL DISCOVERY

Cytodyne hereby demands that Plaintiffs produce all prior discovery, all statements of all Plaintiffs or putative class members, all contracts of the Plaintiffs or putative class members, and all experts of the Plaintiffs or putative class members.

## COUNTERCLAIM

Defendant Cytodyne, by way of Counterclaim against Plaintiffs, and without conceding that this Court is vested with personal jurisdiction over Cytodyne, states as follows:

1.     Cytodyne is a limited liability company of the State of New York and maintains its principal place of business at 140 Lauman Lane, Hicksville, New York 11801.  Cytodyne markets dietary weight loss supplements, including Xenadrine EFX, pursuant to a series of exclusive licensing arrangements with Nutraquest.

2.     This Action against Cytodyne was filed by Plaintiffs without any factual support and solely with the desperate hope that maybe discovery might reveal some sort of basis upon which Plaintiffs can fashion a colorable claim.

3.     The law does not recognize litigation brought in such a haphazard fashion. Litigation may not – as a matter of law – be filed on the mere hope or speculation that discovery

may possibly give rise to a cause of action. Litigation may only be commenced when there is sufficient factual evidence or support that establishes that a plaintiff has at least a *prima facie* cause of action against a party.

4.     The Complaint is rife with unsupported, bare legal conclusions, without specific factual allegations as required by *Fed. R. Civ. P. 9(b)*. As a matter of law, fraud claims such as those set forth in the Complaint, must be pled with particularity pursuant to *Fed. R. Civ. P.* 9(b). Plaintiffs have failed in all respects to comply with the pleading requirements of the Federal Rules.

5.     The utter failure by Plaintiffs to properly plead any allegation with factual support and comply with the pleading requirements of *Fed. R. Civ. P.* 9(b) results in the inescapable conclusion that this Action was filed in contravention to the requirement of *Fed. R. Civ. P.* 11(b)(3), to wit, that the "allegations and other factual contentions have evidentiary support or, if so specifically identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."

6.     The allegations by Plaintiffs against Cytodyne have absolutely no basis in law and/or in fact and are asserted solely for the purpose of harassment, slander, and obstruction, thereby subjecting Plaintiffs to sanctions pursuant to *Fed. R. Civ. P.* 11(c).

7.     As such, this Action is the epitome of frivolous litigation and sanctions are therefore warranted against Plaintiffs and their plethora of legal counsel.

**WHEREFORE**, Cytodyne demands sanctions and judgment against Plaintiffs as follows:

A.     For compensatory, incidental, consequential and punitive damages;

B.     For interest and costs of suit;

C.     Directing the payment of Cytodyne's counsel fees and costs by Plaintiffs; and

D.    For such other relief and sanctions as the Court may deem just and equitable under the circumstances.

**CATALINA & ASSOCIATES**
**A Professional Corporation**
**167 Avenue at the Common**
**Shrewsbury, New Jersey 07702**
**Local Counsel for Defendant, Cytodyne LLC**


**By: /s/ Richard A. Catalina, Jr.                    .**
Dated: Monday, June 21, 2004          **RICHARD A. CATALINA, JR. (4462)**


**HOFFINGER, STERN & ROSS, LLP**
**150 East 58th Street**
**19th Floor**
**New York, New York 10155**
**Lead Counsel for Defendant, Cytodyne LLC**


**DESIGNATION OF TRIAL COUNSEL**

Cytodyne LLC hereby appoints Richard A. Catalina, Jr., Esq. of the law firm of Catalina & Associates, a Professional Corporation, as trial counsel in this matter.

**CERTIFICATION PURSUANT TO LOCAL RULE 11.2**

I hereby certify that the within matter in controversy is not the subject of any other action pending in any other court or of any pending arbitration or administrative proceeding.


/s/ Richard A. Catalina, Jr.                    .
RICHARD A. CATALINA, JR. (RC 4462)

Dated: Monday, June 21, 2004

## JURY DEMAND

Cytodyne LLC hereby demands a trial by jury on all issues.

## ATTORNEY STATEMENT PURSUANT TO LOCAL RULE 201.1(d)(3)

Pursuant to Local Rule 201.1(d)(3), the undersigned, attorney of record for Cytodyne LLC, hereby certifies and declares that the damages recoverable by Cytodyne in this Action on Cytodyne's Counterclaim against Plaintiffs shall exceed the sum of $150,000.00, exclusive of interest and costs of suit, and of any claim for punitive, exemplary or treble damages.

I hereby declare under penalty of perjury that the foregoing statements are true and correct pursuant to 28 U.S.C. § 1746.

/s/ Richard A. Catalina, Jr.                  .
RICHARD A. CATALINA, JR. (RC 4462)

Dated: Monday, June 21, 2004

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned hereby certifies and declares that two (2) true copies of the foregoing Answer and Affirmative Defenses to the Second Amended Complaint and Counterclaim by Defendant Cytodyne LLC were served via facsimile and U.S. First Class Mail upon: (1) William J. Pinilis, Esq., Pinilis Halpern, LLP, 237 South Street, Morristown, New Jersey 07960, attorneys for Plaintiffs; (2) Adam Gonnelli, Esq. and David Leventhal, Esq., Faruqi & Faruqi, 320 East 39th Street, New York, New York 10016, attorneys for Plaintiffs: and (3) Scott Bursor, Esq., Law Offices of Scott A. Bursor, 500 Seventh Avenue, 10th Floor, New York, NY 10018, attorneys for Plaintiffs, on this date.

      And, further, that one copy of the within pleading was further served by First Class Mail on this date to all other parties of interest on the attached Service List.

      I hereby certify that the above statements made by me are true.  I am aware that if any such statement made by me is willfully false, I am subject to punishment.

                   By: <u>/s/ Richard A. Catalina, Jr.</u>                .
                       RICHARD A. CATALINA, JR.

Dated: Monday, June 21, 2004

*Markowitz, et al v Cytodyne, et al*

**Civil Action No. 04-00384 (GEB)**

<u>**Plaintiffs' Counsel**</u>

William J. Pinilis, Esq.
PinilisHalpern, LLP
237 South Street
Morristown, New Jersey 07960

Tel:  (973) 401-1111
Fax:  (973) 401-1114

Adam Gonnelli, Esq.
David Leventhal, Esq.
Faruqi & Faruqi
320 East 39th Street
New York, New York 10016
Tel:  (212) 983-9330
Fax:  (212) 983-9331

Scott Bursor, Esq.
Law Offices of Scott A. Bursor
500 Seventh Avenue
10th Floor
New York, New York 10018

Tel:  (212) 989-9113
Fax:  (212) 989-9163

<u>**Defendants' Counsel**</u>

William Shih, Esq.
Brian J. Malloy, Esq.
Wilentz Goldman & Spitzer, P.A.
90 Woodbridge Center Drive
Woodbridge, NJ 07095

Tel:  (732) 636-8000
Fax:  (732) 855-6117
Direct:  (732) 855-6083

**For: Nutraquest, Inc.**

Mark Hermann, Esq.
Pearson N. Bownas, Esq.
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190

Tel:  (216) 586-3939
Fax:  (216) 579-0212

**For: Nutraquest, Inc.**

Jonathan P. Whitcomb, Esq.
Diserio, Martin, O'Connor & Castiglioni, LLP
1 Atlantic Street
Stamford, CT 06901-2402

Tel:  (203) 358-0800
Fax:  (203)348-2321
**For: Peak Wellness, Inc. and Carlon Colker, M.D.**

Lisa Pascarella, Esq.
Pehlivanian & Braaten, LLC
2430 Route 34
Manasquan, NJ 08736

Tel:  (732) 528-8888
Fax:  (732) 528-4445
**For: Peak Wellness, Inc. and Carlon Colker, M.D.**

Simon Kimmelman, Esq.
Jeffrey S. Posta, Esq.
Sterns & Weinroth
50 West State Street
Suite 1400
PO Box 1298
Trenton, NJ 08607

Tel:  (609) 989-5064
Fax:  (609) 392-7956

**Bankruptcy Counsel for: Nutraquest, Inc.**

Guy V. Amoresano, Esq.
Gibbons, Del Deo, Dolan, Griffinger &
Vecchione, P.C.
One Riverfront Plaza
Newark, New Jersey 07102

Tel: (973) 596-4835
Fax: (973) 639-6255

**Counsel for Robert Chinery, Jr., Kelly Conklin, ProSource Nutritional Systems, ProSource Performance Products, and RTC Research and Development, LLC.**

Frank J. Vecchione, Esq.
Brian J. McMahon, Esq.
Gibbons, DelDeo
One Riverfront Plaza
Newark, NJ 07102

Tel:  (973) 596-4521
Fax:  (973) 639-6250

**Bankruptcy Counsel for: Robert Chinery, Jr.**

Richard A. Catalina, Jr. Esq.
Catalina & Associates
167 Avenue at the Common
Shrewsbury, NJ 07702

Tel:  (732) 380-0080
Fax:  (732) 380-0081

**Local Counsel for:  Cytodyne LLC, Phoenix Laboratories, Inc., Mel Rich and Tim Zeigenfuss**

Stephen R. Stern, Esq.
Hoffinger, Stern & Ross, LLP
150 East 58th Street, 19th Floor
New York, NY 10155

Tel:  (212) 421-4000
Fax  (212) 750-1259

**Lead Counsel for: Cytodyne LLC, Phoenix Laboratories, Inc., Mel Rich and Tim Zeigenfuss**

## Additional Counsel

Natalie D. Ramsey, Esq.
Montgomery, McCracken, Walker &
Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109

Anthony Sodono III, Esq.
Assistant U.S. Trustee
Office of the U.S. Trustee
One Newark Center
Newark, New Jersey 07102